# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 11-1340

NATIONAL ROOFING CONTRACTORS ASSOCIATION, *et al.*,

*Petitioners*,

*v.*

UNITED STATES DEPARTMENT OF LABOR, *et al.*,

*Respondents*.

Petition for Review of a Safety Standard
Issued by the Secretary of Labor

SUBMITTED MARCH 4, 2011—DECIDED APRIL 7, 2011

Before EASTERBROOK, *Chief Judge*, and COFFEY and ROVNER, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Any "occupational safety and health standard" issued by the Secretary of Labor to carry out the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651–78, is reviewable in a court of appeals. 29 U.S.C. §655(f). The National Roofing Contractors Association, together with other persons and groups in the residential construction industry, has filed

a petition asking us to set aside Directive STD 03-11-002, which the Secretary issued on December 16, 2010. Petitioners want us to stay the Directive, which takes effect in June, while litigation proceeds. Although lengthy, the Directive's material contents boil down to two propositions: (1) Directive STD 03-00-001, which was issued in June 1999, is revoked, and (2) 29 C.F.R. §1926.501(b)(13) will be enforced as written. In addition to opposing the motion for a stay, the Secretary contends that Directive STD 03-11-002 ("the 2010 Directive") is not an "occupational safety and health standard" and asks us to dismiss the petition for review.

Section 1926.501(b)(13) provides:

> Each employee engaged in residential construction activities 6 feet (1.8 m) or more above lower levels shall be protected by guardrail systems, safety net system, or personal fall arrest system unless another provision in paragraph (b) of this section provides for an alternative fall protection measure. Exception: When the employer can demonstrate that it is infeasible or creates a greater hazard to use these systems, the employer shall develop and implement a fall protection plan which meets the requirements of paragraph (k) of §1926.502.

> Note: There is a presumption that it is feasible and will not create a greater hazard to implement at least one of the above-listed fall protection systems. Accordingly, the employer has the burden of establishing that it is appropriate to

> implement a fall protection plan which complies with §1926.502(k) for a particular workplace situation, in lieu of implementing any of those systems.

During the rulemaking that preceded this regulation's adoption in 1994, many comments contended that using guardrails, nets, or "personal fall arrest systems" could increase rather than reduce the hazards encountered by workers in residential construction. This led to the exception in the regulation's first paragraph, an exception on which (per the second paragraph) the employer bears the burden of production and persuasion should the Secretary commence a formal proceeding.

The 1994 regulation was not wholly satisfactory to either the building industry or employee groups, and in 1999 the Secretary issued Directive STD 3-0.1A, later renumbered as STD 03-00-001 ("the 1999 Directive"). This document told officials of the Occupational Safety and Health Administration not to commence enforcement proceedings under §1926.501(b)(13) if the employer used slide guards or other fall-protection systems that were described in the 1999 Directive. In other words, the 1999 Directive constituted an exercise of prosecutorial discretion: instead of requiring employers to establish, case by case, that slide guards (and the other methods mentioned in the 1999 Directive but not the regulation) are safer than the three methods named in §1926.501(b)(13), the Department of Labor would treat slide guards (etc.) as safe enough. Accompanying the 1999 Directive was an advance notice of proposed rulemaking, which sought comments on whether (and, if so, how) §1926.501(b)(13) should be amended. 64 Fed. Reg. 38,078 (July 14, 1999).

Rulemaking took more than a decade—and in the end the Secretary decided that §1926.501(b)(13) is fine as it stands, because the exception established by the second sentence allows enough flexibility when an employer believes that the three preferred kinds of safety systems are hazardous. The rulemaking was closed without any change to the regulation, coupled with the rescission of the 1999 Directive and its replacement by the 2010 Directive, which authorizes administrative proceedings that may require employers to show, one building site at a time, why they have used a fall-protection system other than a kind specified by the regulation. It is this 2010 Directive that petitioners say is a new "occupational safety and health standard".

An "occupational safety and health standard" is "a standard which requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment." 29 U.S.C. §652(8). Section 1926.501(b)(13) meets this definition; the 2010 Directive does not. The regulation, not the Directive, is what requires "the adoption or use of one or more practices, means, methods, operations, or processes" to increase workers' safety. And the time to challenge the 1994 regulation has expired; §655(f) allows only 60 days.

Petitioners contend that the 2010 Directive must be a new standard, because it subjects employers to requirements that they have not had to meet since mid-1999 (and perhaps earlier; a directive issued in December 1995

presaged the 1999 Directive). A contractor that uses a slide guard rather than one of the regulation's methods now faces administrative litigation and may be found in violation if a defense based on the exception fails, when for the previous 10 years a slide guard was a sure way to avoid liability. Note how we put this: a slide guard would "avoid liability," *not* "comply with the regulation." The 1999 Directive did not alter the regulation; it just exercised the prosecutorial discretion that agencies possess. See *Heckler v. Chaney*, 470 U.S. 821 (1985); *FTC v. Universal-Rundle Corp.*, 387 U.S. 244 (1967). The Secretary committed to paper the criteria for allowing regulatory violations to exist without redress, a step essential to control her many subordinates. This does not make the exercise less discretionary. Administrative discretion may be exercised by formal policies as well as one case at a time. See *Lopez v. Davis*, 531 U.S. 230 (2001).

Discretionary decisions by one Secretary of Labor may be altered by another without any change in the statute or regulation. It has been a long time since the Assistant Attorney General for the Antitrust Division has filed a suit under the Robinson-Patman Act, but if the incumbent should change that policy and commence a price-discrimination action, that step would not be equivalent to enacting a new statute (it assuredly would not require the assent of both Houses of Congress plus the President's signature) or even promulgating a new regulation. Likewise the merger guidelines issued by one Assistant Attorney General may be revised by another, because all the guidelines do is inform businesses what considerations will lead the Justice Department to sue.

Just so here: the 2010 Directive tells the construction industry what will lead the Secretary to launch administrative proceedings. Those proceedings, once under way, are governed entirely by the regulation; the 2010 Directive does not modify the rules. By deciding to enforce a 1994 regulation as written, the Secretary has not adopted a new "occupational safety and health standard".

Recently another circuit reached the same conclusion in functionally identical circumstances. See *Steel Erectors Association of America, Inc. v. Occupational Safety and Health Administration*, 2011 U.S. App. LEXIS 3137 (4th Cir. Feb. 17, 2011). In 2001 OSHA promulgated a regulation establishing safety standards for the construction and repair of bridges and similar steel structures. The next year it issued a directive stating that certain violations of this regulation would not lead to enforcement proceedings, if employers took different precautions. In 2010 it rescinded this directive and announced that it would address the propriety of these extra-regulatory precautions one case at a time when deciding whether a violation is too insignificant to justify the commencement of formal proceedings. *Steel Erectors Association* holds that the policy adopted in 2010 is not an "occupational safety and health standard" subject to judicial review. It is instead an enforcement policy; the "standard" is the 2001 regulation. We agree with *Steel Erectors Association*.

Petitioners insist that *Steel Erectors Association* is different because the directive at issue there was a real exercise of prosecutorial discretion, while the 2010 Direc-

tive "specifically and expressly prohibits the use of . . . alternative means of fall protection". If the 2010 Directive does that, then it modifies §1926.501(b)(13) by eliminating the regulation's exception. That would make the 2010 Directive an "occupational safety and health standard"—and an invalid one, because regulations cannot be amended without new rulemaking. The 2010 Directive was not adopted using notice-and-comment procedures. Yet petitioners' assertion that the 2010 Directive "specifically and expressly prohibits the use of . . . alternative means of fall protection" is not accompanied by either a quotation or a citation. We have read the 2010 Directive and cannot find any such "specific" or "express" prohibition, or even an implied one. The 2010 Directive says that certain fall-prevention methods other than the three specified in the regulation are no longer safe harbors; employers will have to justify their use under the regulation's standards, but this is a far cry from a *prohibition* of alternative methods.

*Chamber of Commerce v. Department of Labor*, 174 F.3d 206 (D.C. Cir. 1999), on which petitioners heavily rely, does not support their position. The agency issued a directive that established a nominally voluntary program of inspections designed "to foster safety policies more stringent than any required by the Act or by regulations implementing the Act". *Id*. at 210. It did this by prescribing, as a penalty, an inspection not otherwise required by regulation. *Id*. at 211. The court concluded that the set of incentives established by the directive amounted to a health and safety standard because it went beyond established regulations. But the 2010 Direc-

tive does not go beyond any regulation; petitioners' complaint is precisely that the 2010 Directive proclaims a policy of enforcing an existing regulation, which had not been fully enforced in recent years. Nothing in *Chamber of Commerce* suggests that a policy of enforcing a regulation is itself a new safety standard.

As far as we can see, nary an appellate decision supports the proposition that agencies must use rulemaking to adopt, modify, or rescind directives (or equivalent documents) that inform the public how prosecutorial discretion will be exercised. When all duties rest on a statute or valid regulation—as they do here—agencies are free to be lenient in enforcement without committing themselves to use rulemaking in order to become more strict. The 1999 Directive reflects a policy of lenience, and the 2010 Directive a policy of strict enforcement, but neither policy is an "occupational safety and health standard." The "standard" is §1926.501(b)(13), which has been unchanged since 1994.

Petitioners don't want the 2010 Directive annulled so much as they want the 1999 Directive reinstated. Yet if the 2010 Directive is an "occupational health and safety standard", so is the 1999 Directive—and if the 2010 Directive is invalid because not adopted by rulemaking, the 1999 Directive is equally invalid. We could not order the agency to reinstate a directive that is vulnerable to the very objection used to set aside its replacement.

But neither directive is invalid. The judiciary is not authorized to tell agencies how they must use prosecutorial discretion when implementing valid rules,

such as the 1994 regulation. Functional as well as formal (separation-of-powers) concerns support leaving prosecutorial decisions to prosecutors. "Courts cannot intelligently supervise [an agency's] allocation of its staff's time, because although judges see clearly the claim the [agency] has declined to redress, they do not see at all the tasks the staff may accomplish with the time released. Agencies must compare the value of pursuing one case against the value of pursuing another; declining a particular case hardly means that the [agency's] lawyers and economists will go twiddle their thumbs; case-versus-case is the daily tradeoff. Judges compare the case at hand against a rule of law or an abstract standard of diligence and do not see the opportunity costs of reallocations within the agency. That fundamental difference in the perspectives of the two bodies is why agencies (and other prosecutors) rather than courts must make the decisions on pursuing or dropping claims. Resource allocation is not a task governed by 'law'. It is governed by budgets and opportunities. Agencies 'take Care that the Laws be faithfully executed' (Art. II, §3) by doing the best they can with the resources Congress allows them. Judges could make allocative decisions only by taking over the job of planning the agency's entire agenda, something neither authorized by statute nor part of their constitutional role." *Chicago Board of Trade v. SEC*, 883 F.2d 525, 531 (7th Cir. 1989). The Secretary of Labor is entitled to enforce §1926.501(b)(13) by bringing those proceedings that, in the Secretary's view, best promote workplace safety, and by declining to bring others that would have lesser

payoffs. The decision belongs to the Secretary, not to the court.

If, as petitioners contend, alternative fall-protection methods are safer than the three named in the 1994 regulation, then employers will prevail in any administrative proceedings that the Secretary commences. If the record demonstrates that employers have used a safer method, and an administrative law judge nonetheless rules otherwise, then the employer will prevail on judicial review. It would be inappropriate to block the Secretary from commencing an enforcement proceeding, just because employers predict that the regulation's exception will not be applied correctly.

The petition for review is dismissed.