# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued April 4, 2022                    Decided August 26, 2022

No. 22-1002

IN RE: NATIONAL NURSES UNITED, ET AL.,
PETITIONERS

———

On Petition For A Writ of Mandamus

———

*Nicole J. Daro* argued the cause for petitioners. With her on the petition for a writ of mandamus and the reply were *Micah L. Berul, Carol A. Igoe, Jonathan Walters, David J. Strom, Judy Rivlin, Harold Craig Becker,* and *Randy S. Rabinowitz.*

*Joseph Gilliland*, Attorney, U.S. Department of Labor, argued the cause for respondents. On the opposition to the petition for writ of mandamus were *Edmund C. Baird*, Associate Solicitor for Occupational Safety and Health, *Heather R. Phillips*, Counsel for Appellate Litigation, and *Anne E. Bonfiglio*, Attorney. *Johnda D. Bentley*, Attorney, entered an appearance.

Before: SRINIVASAN, *Chief Judge*, RAO, *Circuit Judge*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* RAO.

RAO, *Circuit Judge*: In June 2021, the Occupational Safety and Health Administration ("OSHA") promulgated an emergency temporary standard to mitigate the risk of COVID-19 transmission in healthcare settings ("Healthcare ETS"). In December 2021, OSHA announced its intent to withdraw the Healthcare ETS while continuing to work on the permanent standard. National Nurses United and its co-petitioners ("the Unions") seek a writ of mandamus compelling OSHA (1) to issue a permanent standard superseding the Healthcare ETS within 30 days of the writ's issuance; (2) to retain the Healthcare ETS until a permanent standard supersedes it; and (3) to enforce the Healthcare ETS.

We lack jurisdiction to compel OSHA to retain the Healthcare ETS because doing so would not aid our current or prospective jurisdiction as required for relief under the All Writs Act. Moreover, mandamus is reserved only for transparent violations of a clear duty to act. We cannot order OSHA to promulgate a permanent standard because at the conclusion of the rulemaking process, OSHA is permitted to determine that no standard should issue. And enforcement of the Healthcare ETS is squarely within OSHA's prosecutorial discretion and therefore inappropriate for judicial control through mandamus. Therefore, we deny the petition in part and dismiss it in part for lack of jurisdiction.

I.

A.

The Occupational Safety and Health Act ("Act") was enacted "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources." Pub. L. No. 91-596, § 2(b), 84 Stat. 1590, 1590 (1970) (codified at 29 U.S.C. § 651(b)). To that end, the Secretary of Labor may promulgate occupational

safety and health standards that employers and employees must comply with. 29 U.S.C. §§ 654(a)(2), (b), 655. The Secretary exercises this authority through OSHA.

Section 6(b) of the Act establishes a set of notice and comment procedures OSHA must follow to issue or amend standards. *See id.* § 655(b). The Act allows the public to comment on or object to a proposed standard and provides for a public hearing on any objections. *Id.* § 655(b)(2)–(3). At the end of the rulemaking proceeding, OSHA "shall issue a rule promulgating, modifying, or revoking an occupational safety or health standard or make a determination that a rule should not be issued." *Id.* § 655(b)(4).

Section 6(c) allows OSHA to bypass the Act's procedural requirements and promulgate a temporary standard in emergency situations.[1] 29 U.S.C. § 655(c). If OSHA "determines (A) that employees are exposed to grave danger from exposure to substances … and (B) that [an] emergency standard is necessary to protect employees from such danger," then OSHA "shall provide … for an emergency temporary standard ["ETS"] to take immediate effect upon publication in the Federal Register." *Id.* § 655(c)(1). The ETS "shall be effective until superseded by a standard promulgated in accordance with the procedures prescribed" in section 6(c)(3). *Id.* § 655(c)(2). Section 6(c)(3), in turn, says OSHA shall commence the Act's notice and comment procedures "[u]pon publication of" the ETS, shall use the ETS as the proposed rule for that proceeding, and "shall promulgate a standard … no

---

[1] Emergency temporary standards have been extremely rare. From the time the Act was enacted in 1970 until the COVID-19 pandemic, OSHA had issued only nine of them. *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab.*, 142 S. Ct. 661, 663 (2022) (per curiam).

later than six months after publication of the emergency standard." *Id.* § 655(c)(3).

Standards may be challenged by a person who is "adversely affected" by petitioning a federal circuit court within sixty days of when the standard is promulgated. *Id.* § 655(f). Once sixty days have elapsed, no court has jurisdiction to review a pre-enforcement challenge to a standard. Instead, the validity of a standard may be challenged as a defense in an enforcement action. *See id.* § 660(a).

## B.

Soon after taking office, President Biden directed OSHA to "consider whether any emergency temporary standards on COVID-19 … are necessary," and if so, to issue them. Exec. Order No. 13,999, § 2(b), 86 Fed. Reg. 7,211, 7,211 (Jan. 21, 2021). In response, OSHA determined that exposure to COVID-19 "presents a grave danger" to healthcare workers, and that an ETS is "necessary" to protect them. Based on these findings, the Secretary promulgated the Healthcare ETS, which set forth required precautionary measures in healthcare occupational settings.[2] Occupational Exposure to COVID-19; Emergency Temporary Standard, 86 Fed. Reg. 32,376, 32,377

---

[2] The Healthcare ETS requires, among other things, healthcare employers to "develop and implement a COVID-19 plan," as well as policies to implement the Centers for Disease Control and Prevention's "Guidelines for Isolation Precautions," 29 C.F.R. § 1910.502(c)(1), (e); to screen patients for COVID-19 symptoms upon entry, *id.* § 1910.502(d); to provide for personal protective equipment and physical distancing, *id.* § 1910.502(f), (h); to "limit the number of employees present during" procedures that generate aerosols, *id.* § 1910.502(g)(1); to implement cleaning and ventilation protocols, *id.* § 1910.502(j)–(k); and to train employees on COVID-19, *id.* § 1910.502(n).

(June 21, 2021) (codified at 29 C.F.R. § 1910.502 *et seq.*) ("Healthcare ETS").

Shortly after issuing the Healthcare ETS, OSHA's strategy for combatting COVID-19 shifted. Rather than focusing specifically on healthcare settings, OSHA developed and promulgated an ETS requiring employees of all large employers to either get vaccinated against COVID-19 or test weekly. COVID-19 Vaccination and Testing; Emergency Temporary Standard, 86 Fed. Reg. 61,402 (Nov. 5, 2021) ("Vaccine ETS"). The Supreme Court held the Vaccine ETS likely exceeded OSHA's statutory authority. *See Nat'l Fed'n of Indep. Bus. v. Dep't of Lab.*, 142 S. Ct. 661, 664–66 (2022) (per curiam).

Because OSHA had allocated significant resources to developing the Vaccine ETS, it had fallen behind on promulgating a permanent COVID-19 standard for healthcare settings. In December 2021, OSHA announced its intention to withdraw the Healthcare ETS because it was unable to complete the necessary notice and comment procedures within the six-month timeframe.[3] *Statement on the Status of the OSHA COVID-19 Healthcare ETS*, OCCUPATIONAL SAFETY AND HEALTH ADMIN. (Dec. 27, 2021), https://www.osha.gov/coronavirus/ets. OSHA emphasized that COVID-19 still posed a danger to healthcare workers and that the ETS was still necessary to protect them. OSHA also explained it would "continue to work expeditiously to issue a final standard" and, until that time, "vigorously enforce … its general standards … to help protect healthcare employees from the hazard of

---

[3] The provisions of the Healthcare ETS relating to recordkeeping were promulgated under different statutory authority and thus were not subject to the six-month timeframe, so OSHA announced it was not withdrawing them.

COVID-19." *Id*. Because it recognized it was unable to issue a permanent standard "in a timeframe approaching the one contemplated by the … Act," OSHA announced that it would withdraw the Healthcare ETS in a notice published in the Federal Register. *Id.*

Before OSHA withdrew the ETS, the Unions filed this petition for mandamus. OSHA decided not to publish the withdrawal while the petition was pending, so the Healthcare ETS remains on the books. But OSHA conceded at oral argument that it was no longer enforcing the ETS.

## II.

The Unions petition for a writ of mandamus compelling OSHA (1) to issue a permanent standard superseding the Healthcare ETS within 30 days; (2) to refrain from withdrawing the Healthcare ETS until it promulgates a permanent standard; and (3) to continue enforcing the Healthcare ETS. They seek relief pursuant to the All Writs Act, which empowers this court to "issue all writs necessary or appropriate in aid of [its] … jurisdiction[] and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). When a party requests a writ of mandamus against an agency under the All Writs Act, we undertake a three-step inquiry.

First, we must ensure that we have jurisdiction by considering whether issuing the writ would protect our current or prospective jurisdiction.[4] The All Writs Act does not grant

---

[4] This jurisdictional inquiry should not be confused with the inquiry for a writ of mandamus sought under the Mandamus Act. Pub L. No. 87-748, 76 Stat. 744 (1962) (codified at 28 U.S.C. § 1361). That Act grants district courts "original jurisdiction of any action in the nature of mandamus," 28 U.S.C. § 1361, which they have "only if: (1) the

jurisdiction to issue a writ of mandamus. *In re Tennant*, 359 F.3d 523, 527 (D.C. Cir. 2004). Instead, it authorizes the issuance of a writ of mandamus in aid of jurisdiction this court already has or will have as a result of issuing the writ. *See id.* at 527–28. When an agency unlawfully withholds or unreasonably delays an action this court would have jurisdiction to review, the All Writs Act empowers us to issue a writ compelling the agency to complete the action so we can exercise our jurisdiction to review it. *Telecomms. Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 75–76 (D.C. Cir. 1984). If, on the other hand, the court does not and would not have jurisdiction to review the agency action sought by petitioners, it cannot bootstrap jurisdiction via the All Writs Act. *See id.* at 77 (explaining that when a court "has no present or future jurisdiction over agency actions … it can contemplate no exercise of jurisdiction that mandamus might aid"); *In re Stone*, 569 F.2d 156, 157 (D.C. Cir. 1978) (per curiam) ("We have no appellate jurisdiction over the instant case, past, present, or future, which mandamus could 'aid.' Therefore we lack jurisdiction to issue the writ.").

Second, if the court has jurisdiction, it must consider whether the agency has a crystal-clear legal duty to act. The writ remains "reserved only for the most transparent violations of a clear duty to act." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (cleaned up). The duty must be incontrovertible and not a matter within the agency's discretion. *See Thomas v. Holder*, 750 F.3d 899, 904 (D.C. Cir.

plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff," *Muthana v. Pompeo*, 985 F.3d 893, 910 (D.C. Cir. 2021) (cleaned up), *cert. denied*, 142 S. Ct. 757 (2022). In All Writs Act cases, these three requirements inform whether mandamus is appropriate on the merits, but not whether we have jurisdiction.

2014) (explaining that "if the act [petitioners] seek to compel is discretionary," then the writ cannot issue, "as government officials have no clear duty to perform such acts"). Under the All Writs Act, we may issue only those writs "necessary or appropriate" and "agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). When courts assess whether an agency has a clear duty to act, we look to the statutory requirements imposed by Congress and whether an Executive Branch agency retains discretion over a particular action.

Third, even when a clear duty exists, we consider whether judicial intervention would be appropriate because the writ of mandamus is a drastic remedy reserved for extraordinary circumstances. *See Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380 (2004); *In re Pub. Emps. for Env't Resp.*, 957 F.3d 267, 273 (D.C. Cir. 2020). In cases of alleged agency delay, we will not issue the writ unless the agency's delay in fulfilling its duty "is so egregious as to warrant mandamus." *TRAC*, 750 F.2d at 79.

A.

We turn first to the Unions' request for the writ of mandamus to compel OSHA to issue a permanent standard within thirty days. Recognizing that in some situations OSHA's duty to complete its rulemaking procedures is clear, we have in the past ordered OSHA to expedite its rulemaking process. *See, e.g.*, *Pub. Citizen Health Rsch. Grp. v. Auchter*, 702 F.2d 1150, 1157–58 (D.C. Cir. 1983) (per curiam). But the Unions are not asking this court to compel OSHA to complete the rulemaking process triggered by the Healthcare ETS. Rather, they petition this court to compel OSHA to reach a particular result from that process—the promulgation of a permanent standard. Their petition makes this clear throughout, particularly in the request for relief, which asks for a writ of mandamus ordering OSHA to "[i]ssue … a Permanent

Standard for Healthcare Occupational Exposure to COVID-19." In that regard, while the Unions acknowledge OSHA has "discretion as to the content of any standard," they maintain OSHA has a "a statutory duty to impose some type of mandatory, legally-enforceable obligations on employers sufficient to protect healthcare employees from" COVID-19. Because OSHA has not withdrawn the findings that a standard is necessary to combat a grave danger, the Unions argue that the Act mandates the eventual adoption of a permanent standard addressing these dangers. The Unions further contend the Act requires OSHA to promulgate the permanent standard within six months and that its failure to do so constitutes a delay egregious enough to warrant mandamus.

At the outset, we have jurisdiction to grant this relief. When a statute grants courts of appeals jurisdiction to review agency action, the All Writs Act empowers those courts to issue a writ of mandamus compelling the agency to complete the action. *TRAC*, 750 F.2d at 75–76. The Occupational Safety and Health Act commits review of OSHA standards to the courts of appeals. 29 U.S.C. § 655(f). Although this court does not have jurisdiction over proposed, i.e., not final, standards, the court may compel the agency to finalize a standard so that it may review it. *See Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW v. Donovan* ("*UAW*"), 756 F.2d 162, 163 (D.C. Cir. 1985) (recognizing the court of appeals had jurisdiction to order OSHA to issue a standard). We therefore have jurisdiction to consider whether mandamus should issue to compel OSHA to promulgate a permanent standard.

Turning to the merits, we find that OSHA does not have a clear duty to issue a permanent standard. Writs of mandamus are "reserved only for the most transparent violations of a clear duty to act." *In re Bluewater Network*, 234 F.3d 1305, 1315

(D.C. Cir. 2000). While OSHA has a clear duty to follow an ETS with a rulemaking proceeding, OSHA does not have a clear duty to promulgate a permanent standard at the end of that proceeding.

The Act states that "[u]pon publication of" an ETS, "the Secretary shall commence a proceeding in accordance with subsection (b)" and "shall promulgate a standard under this paragraph no later than six months after publication of the emergency standard." 29 U.S.C. § 655(c)(3). "[T]he word 'shall' usually connotes a requirement." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016). Courts look to context to confirm whether "shall" imposes a mandatory obligation or whether instead "the context of a particular usage … require[s] the construction of … 'shall' as permissive." *LO Shippers Action Comm. v. ICC*, 857 F.2d 802, 806 (D.C. Cir. 1988); *see also Me. Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1321 (2020) (explaining that a section's "adjacent provisions … underscore[d] its mandatory nature"). When context confirms that "shall" is used in its ordinary, mandatory sense, it imposes a clear duty to act.

Read in context, the Act creates a mandatory duty to follow an ETS with a rulemaking proceeding. The Act provides that after the issuance of an ETS, "the Secretary shall commence a proceeding in accordance with subsection (b)," which outlines the notice and comment procedures to promulgate permanent standards. 29 U.S.C. § 655(c)(3); *see also id.* § 655(b). OSHA may adopt an emergency temporary standard without following the ordinary procedural safeguards. Congress, however, circumscribed that emergency exception by requiring OSHA to use the ETS as a proposed rule, undertake notice and comment, and determine whether to promulgate a permanent standard. *See id.* § 655(c)(3). In this context, "shall" imposes a mandatory requirement on the

agency to follow the ETS with a permanent rulemaking process. If that process were optional, OSHA could simply impose standards through the emergency exception and avoid the Act's rulemaking procedures. But these procedures ensure that permanent standards imposing obligations on private parties are promulgated only after public participation and agency deliberation. We decline to read the Act in a manner that creates a loophole for the agency to avoid the rulemaking requirements prescribed by Congress.

While the rulemaking process is mandatory, promulgating a permanent standard is not. The Act states that the agency "shall promulgate a standard … no later than six months after publication of the emergency standard" but also that any standard following an ETS be promulgated "in accordance with subsection (b)." 29 U.S.C. § 655(c)(3). Contrary to the Unions' assertions, the Act imposes no requirement to promulgate a permanent standard. Any permanent standard must be promulgated in accordance with the ordinary rulemaking process in the Act, which plainly provides that OSHA may conclude the process either by promulgating a permanent standard or by "mak[ing] a determination that a [standard] should not be issued." *Id.* § 655(b)(4). OSHA is permitted to choose either path, which means it does not have a clear duty to promulgate a permanent standard. Reading the provisions together and in context, OSHA has no clear duty to issue a permanent standard because it has a clear duty to undertake a notice and comment process, and that process may result in a determination that no permanent standard is necessary.

The Unions maintain that OSHA must issue a permanent standard because the agency has not withdrawn its findings that COVID-19 poses a grave danger and that a healthcare standard is necessary. The fact of these findings, which supported the Healthcare ETS, does not necessitate the issuance of a

permanent standard. If it did, there would be little to be gained by undertaking the rulemaking process mandated by the Act. The purpose of that process is to allow public input as the agency considers a health and safety problem and fashions the appropriate regulatory solutions. The Unions concede that after reviewing public comments, OSHA will have "discretion as to the content of any standard regulating workplace exposures to COVID-19." As the Act explicitly recognizes, part of OSHA's discretion with respect to the content of these standards includes the discretion to decide that no permanent standard should issue at all. *See* 29 U.S.C. § 655(b)(4). At the end of the rulemaking process, OSHA may determine that COVID-19 is not a grave danger within the meaning of the Act or that no standard is necessary. Or OSHA may maintain the findings in the Healthcare ETS and decide to promulgate a standard. We cannot issue a writ of mandamus ordering OSHA to follow one path or another.

In sum, while OSHA has a clear duty to follow the notice and comment process to determine what standard, if any, should supersede the Healthcare ETS, it has discretion to determine that no standard should issue. The Unions petition for more than just the expeditious completion of OSHA's *process*, they ask this court to compel OSHA to promulgate a permanent standard. OSHA has no clear duty to issue a permanent standard, so we cannot compel the agency to do so.

B.

The Unions also petition for the writ of mandamus to compel OSHA to retain the Healthcare ETS until it promulgates a permanent standard.[5] Although the government

---

[5] The Unions were correct to request a writ of mandamus, as opposed to a stay, even though their request to "retain" the Healthcare ETS is

does not contest our jurisdiction to decide whether the Unions are entitled to this relief, we "have an independent obligation to determine whether subject-matter jurisdiction exists." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). Because retaining the Healthcare ETS does not serve our current or prospective jurisdiction, we cannot grant this relief.

As explained above, the All Writs Act "does not expand the jurisdiction of a court." *TRAC*, 750 F.2d at 76. Instead, it allows a court to issue writs, including a writ of mandamus, to protect jurisdiction it already has or will have once an "appeal has been perfected." *Id.* (cleaned up). We only have jurisdiction to compel an agency to take an action we would ultimately have jurisdiction to review.

Ordering OSHA to "retain" the Healthcare ETS, i.e., to refrain from withdrawing it, does not protect our current or prospective jurisdiction because we do not now, nor would we in the future, have jurisdiction to review pre-enforcement challenges to the Healthcare ETS. The Act grants courts of appeals jurisdiction to review "a petition challenging the validity" of a standard brought by "[a]ny person who may be adversely affected by [the] standard." 29 U.S.C. § 655(f). But petitions must be brought "prior to the sixtieth day after such standard is promulgated." *Id.* After sixty days, no court has jurisdiction under the Act to review a standard unless and until

---

a request "to preserve the status quo." *Cf. In re NTE Conn., LLC*, 26 F.4th 980, 988 n.2 (D.C. Cir. 2022). Because the mechanism by which the Unions seek to maintain the status quo is an order telling OSHA "what … not to do," the petition properly asks for a writ of mandamus. *See Nken v. Holder*, 556 U.S. 418, 428 (2009) (explaining that an injunction, which is similar to a writ of mandamus, "is a means by which a court tells someone what to do or not to do," whereas "a stay operates upon the judicial proceeding itself … by temporarily divesting an order of enforceability").

OSHA enforces it. *See Simplex Time Recorder Co. v. Sec'y of Lab.*, 766 F.2d 575, 582 n.2 (D.C. Cir. 1985) ("[N]o pre-enforcement challenges to a standard can be entertained in the courts of appeals unless the requirements of section 6(f) are met.") (emphasis omitted); *see also Kiewit Power Constructors Co. v. Sec'y of Lab.*, 959 F.3d 381, 390 (D.C. Cir. 2020) ("Although section 6(f) would be the exclusive method for obtaining pre-enforcement judicial review of a standard, the provision does not foreclose an employer from challenging the validity of a standard during an enforcement proceeding.") (cleaned up).

Because the sixty-day time limit expired long before the Unions' petition, we do not have current or prospective jurisdiction over pre-enforcement challenges to the Healthcare ETS. Compelling OSHA to retain the Healthcare ETS would therefore not protect our jurisdiction to review it.

The Unions make two arguments in favor of our jurisdiction. First, they suggest that because the Act says "[t]he Secretary shall provide … for an emergency temporary standard … if he determines" that one is necessary to protect workers from a grave danger, 29 U.S.C. § 655(c)(1), the Act creates a "substantive statutory mandate" to have an ETS when those conditions are met, which we can compel OSHA to "carry out," *Pub. Citizen Health Rsch. Grp. v. Comm'r, FDA*, 740 F.2d 21, 32 (D.C. Cir. 1984).

Even assuming the Secretary has a non-discretionary duty to issue an ETS in certain situations, the Unions' argument conflates ordering OSHA to issue an ETS with ordering OSHA to retain an ETS it has already issued. Because we have jurisdiction to review an ETS if a challenge is brought within sixty days of its promulgation, we have jurisdiction under the All Writs Act to compel OSHA to issue an ETS. *See UAW*, 756

F.2d at 163. Once an ETS has issued, however, the judicial review clock begins to run, defeating our jurisdiction as explained above.

Second, the Unions contend we have jurisdiction to compel OSHA to retain the ETS because it serves as the proposed rule for a permanent standard. In *International Union, United Mine Workers of America v. U.S. Department of Labor*, we explained that although we did not have jurisdiction to review the withdrawal of a proposed standard under the Mine Act, the All Writs Act empowered us to compel the agency to promulgate the withdrawn standard since we would have jurisdiction to review it after promulgation. 358 F.3d 40, 42–43 (D.C. Cir. 2004). Because the Healthcare ETS serves as the proposed rule for a permanent standard, the Unions maintain we would have jurisdiction to review the permanent standard if a petition was filed within sixty days.

But our jurisdiction over the permanent standard is unaffected by whether OSHA retains the Healthcare ETS. As explained above, OSHA's duty to commence and eventually complete section 6(b)'s notice and comment process is mandatory. The Healthcare ETS will serve as the proposed rule for the proceeding whether it is withdrawn or retained. *See* 29 U.S.C. § 655(c)(3) ("Upon publication of [an ETS] … the Secretary shall commence a proceeding in accordance with subsection (b) … and the standard as published shall also serve as a proposed rule for the proceeding."). If OSHA decides to promulgate a permanent standard at the conclusion of the rulemaking process, we will have jurisdiction to review it. But because the ETS serves as the proposed rule regardless of whether it is retained, compelling OSHA to retain the ETS would not aid our prospective jurisdiction.

C.

Finally, we turn to the Unions' petition to compel OSHA to enforce the Healthcare ETS. We have jurisdiction to issue this writ because if OSHA enforced the Healthcare ETS, we would have jurisdiction to review challenges to it as a defense to an enforcement action. 29 U.S.C. § 660(a); *Kiewit Power Constructors Co.*, 959 F.3d at 390–91.

We cannot grant this relief, however, because OSHA's decision not to enforce the Healthcare ETS does not violate a clear duty to act. OSHA's determination of whether, when, and how vigorously to enforce a particular standard is committed to the agency's discretion and not subject to judicial review. *See Arpaio v. Obama*, 797 F.3d 11, 16 (D.C. Cir. 2015) ("[A]ll agencies have discretion to prioritize in light of the Secretary's and, ultimately, the President's assessments 'whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all.'") (quoting *Heckler v. Chaney*, 470 U.S. 821, 831 (1985)); *see also Nat'l Roofing Contractors Ass'n v. U.S. Dep't of Lab.*, 639 F.3d 339, 343 (7th Cir. 2011) (recognizing agency enforcement discretion in the OSHA context).

Writs of mandamus are reserved for "the ordering of a precise, definite act about which an official ha[s] no discretion whatever." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004) (cleaned up). We cannot compel OSHA to enforce the Healthcare ETS because its discretion over which standards to enforce and when is the antithesis of a clear duty to act.

\* \* \*

For the foregoing reasons, we deny in part and dismiss in part the Unions' petition for a writ of mandamus.

*So ordered.*