# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 18, 2023

Lyle W. Cayce
Clerk

No. 22-60458

In re: Louisiana Public Service Commission,

*Petitioner*.

Petition for a Writ of Mandamus
to the Federal Energy Regulatory Commission
Agency No. EL21-56
Agency No. EL17-41
Agency No. EL18-142
Agency No. EL18-204
Agency No. EL18-152

Before Higginbotham, Duncan, and Wilson, *Circuit Judges*.

Patrick E. Higginbotham, *Circuit Judge*:

The Louisiana Public Service Commission ("LPSC") petitions this court for a writ of mandamus compelling the Federal Energy Regulatory Commission ("FERC") to resolve several of its complaints before the agency related to a ratemaking dispute with System Energy Resources, Inc. ("SERI"), operator of the Grand Gulf Nuclear Station. We conclude that FERC has yet to provide this court with sufficient explanation for its delay despite ongoing irreparable harm to consumers.

**I.**

FERC retains broad authority to regulate the transmission and sale of electricity in interstate commerce under the Federal Power Act, and

No. 22-60458

adjudication before the agency represents the sole pathway for retail regulators to seek changes to regulated electricity rates.[1] Public utilities may file a new rate at any time under Section 205 of the Federal Power Act,[2] and other parties—such as retail regulators—may then assert that the rate is "unjust, unreasonable, unduly discriminatory or preferential" in a Section 206 complaint.[3]

In recent years, the LPSC—along with its counterparts in Arkansas, Mississippi, and New Orleans—have submitted several Section 206 complaints with FERC challenging SERI's filed rates. The LPSC sought various remedies related to adjustment of SERI's return on equity, depreciation rates, alleged violations of the filed rates, and alleged violations of FERC's ratemaking and accounting requirements, among other grievances. One of the LPSC's complaints has now stood before the agency for nearly six years,[4] while two others have languished for at least four years.[5] FERC recently resolved a fourth complaint four years and seven months after the LPSC filed it with the agency.[6] The LPSC also complained that FERC had not issued a

---

[1] *See* 16 U.S.C. § 824. Section 205(c) of the Federal Power Act requires utilities to file rate schedules with FERC. A regulated seller of power may not collect a rate other than that filed with FERC. *Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 578 (1981).

[2] *See* 16 U.S.C. § 824d.

[3] *See id.* § 824e(a).

[4] Complaint, La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc., EL17-41 (Jan. 23, 2017).

[5] Complaint, La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc., EL18-142 (Apr. 27, 2018); Complaint, La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc., EL18-204 (Sept. 24, 2018).

[6] Complaint, La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc., EL18-152 (May 18, 2018).

No. 22-60458

preliminary order in a fifth complaint,[7] although FERC has now established hearing and settlement procedures in that matter—albeit one year and eight months after filing—providing the relief the LPSC sought in its petition.

This court has jurisdiction over the LPSC's petition to safeguard our prospective jurisdiction to review final FERC orders under the Federal Power Act.[8] When federal appellate courts have jurisdiction to review agency action, "the All Writs Act empowers those courts to issue a writ of mandamus compelling the agency to complete the action."[9] This court also has jurisdiction under § 706(1) of the Administrative Procedure Act ("APA") to "compel agency action unlawfully withheld or unreasonably delayed."[10] We interpret the All Writs Act and the APA to provide separate, but closely intertwined, grounds for mandamus relief.[11]

---

[7] Complaint, La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc., EL21-56 (Mar. 2, 2021).

[8] 16 U.S.C. § 825*l*(b); *Telecomms. Rsch. & Action Ctr. v. F.C.C. ("TRAC")*, 750 F.2d 70, 75–78 (D.C. Cir. 1984).

[9] *In re Nat'l Nurses United*, 47 F.4th 746, 753 (D.C. Cir. 2022); *see also Guillory v. Chater*, 91 F.3d 140 (5th Cir. 1996) No. 95-31195, 1996 WL 400294, at *2 (5th Cir. 1996) (unpublished per curiam) ("[T]he federal courts are open to those alleging that an agency decision has been delayed so long as to merit the extraordinary relief of a writ of mandamus directing the agency to resolve the issue with dispatch."); *United States v. Marine Shale Processors*, 81 F.3d 1329, 1337 (5th Cir. 1996) (noting the "clear availability" of mandamus to compel an agency to act more expeditiously (quoting *United States v. Gen. Motors Corp.*, 876 F.2d 1060, 1068 (1st Cir. 1989), aff'd, 496 U.S. 530 (1990))).

[10] 5 U.S.C. § 706(1). *See also Ingalls Shipbuilding, Inc. v. Asbestos Health Claimants*, 17 F.3d 130, 133 n.9 (5th Cir. 1994); *Atl. & Gulf Stevedores, Inc. v. Donovan*, 274 F.2d 794, 802 (5th Cir. 1960).

[11] *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) ("In this regard the APA carried forward the traditional practice prior to its passage, when judicial review was achieved through use of the so-called prerogative writs—principally writs of mandamus under the All Writs Act.").

No. 22-60458

## II.

In its petition, the LPSC argues that mandamus is appropriate because Congress intended for FERC to work through Section 206 complaints more quickly, FERC has violated a statutory command by failing to do so, and FERC inaction is causing irreparable injury to consumers. FERC responds that mandamus is an extraordinary remedy; these complaints represent just a subset of the thirteen different proceedings addressing the Entergy system; there is no deadline—express or implied—for FERC action; and a recent D.C. Circuit opinion overturned the agency's methodology for complaints like these, rendering the delay reasonable.

We conclude that although Congress did not impose a hard and fast deadline for FERC to resolve complaints,[12] it certainly anticipated greater alacrity than this. Congress passed the Regulatory Fairness Act ("RFA") decades ago to push FERC to provide greater attention to Section 206 proceedings.[13] Congress found the statutory remedy necessary at a time when "Section 205 proceedings on average require[d] one year for resolution," compared with "two years on average" for Section 206 proceedings.[14] The

---

[12] *See Exxon Mobil Corp. v. FERC*, 571 F.3d 1208, 1218 (D.C. Cir. 2009) ("[Section 206] does not . . . set a deadline for action."). The LPSC also argues that the Federal Power Act requires FERC to issue a preliminary decision on Section 206 complaints within 60 days. The LPSC reasons that FERC must act on utilities' Section 205 rate filings within 60 days, *see* 16 U.S.C. § 824d(d), and that the RFA requires parity between Section 205 and Section 206 filings, *see* 16 U.S.C. § 824e. Section 206 complaints must therefore receive action within 60 days, the LPSC concludes. This line of argument fails, however, because the Federal Power Act does not require FERC to take any action on Section 205 rate filings—utilities' rates simply go into effect after 60 days unless FERC acts. *See* 16 U.S.C. § 824d(d).

[13] Regulatory Fairness Act, Pub. L. No. 100–473, 102 Stat. 2299 (1988) (codified at 16 U.S.C. § 824e).

[14] Sen. Rep. 100-491 at 3, 100th Cong., 2d Sess. (1988).

RFA requires FERC to afford Section 206 consumer complaints the same priority as utilities' Section 205 rate filings and "otherwise act as speedily as possible" to resolve complaints.[15] The RFA also requires FERC to provide an explanation when it has "failed to" conclude any Section 206 proceeding within 180 days.[16] FERC appears to regularly ignore this requirement,[17] and it has not provided any explanations to the LPSC in this case. The RFA additionally includes a 15-month refund period following the filing of a Section 206 complaint, after which payments made under unjust rates becomes unrecoverable.[18] The Act also required FERC to perform a study examining any resulting "change in the average time taken to resolve proceedings under [S]ection 206."[19] The RFA reflects Congress's sentiment at the time that FERC should take action within one or two years, and the lack of an explicit deadline does not preclude a finding that FERC has delayed unreasonably in this case.

Despite the RFA's guidance, Section 206 proceedings before FERC appear to take much longer, costing consumers hundreds of millions of dollars and pressuring parties to settle. The remaining LPSC complaints have gone four-to-six years without resolution. FERC argues that a writ of mandamus might unfairly allow the LPSC to skip to the front of FERC's queue, noting that some complaints are one or two years older than those the LPSC filed. But in making that point, FERC concedes that some Section 206 proceedings have stretched beyond those at issue here, meaning that many

---

[15] Regulatory Fairness Act, 102 Stat. at 2299.

[16] *Id.*

[17] *See, e.g.*, *Exxon Mobil Corp.*, 571 F.3d at 1218 (D.C. Cir. 2009) (noting that FERC did not provide an explanation).

[18] Regulatory Fairness Act, 102 Stat. at 2299.

[19] *Id.* at 2301.

No. 22-60458

consumers have been paying unjust rates—without hope for a refund—for more than six years. The LPSC argues that consumers are over-paying SERI by about $4 million per month due to the activity alleged in one complaint. Another complaint alleges that consumers in Louisiana unjustly paid a further $360 million in costs for Grand Gulf.[20] These estimates gain credibility from the fact that the Mississippi Public Service Commission recently settled with SERI for $235 million.[21] And the unrecoverable cost to consumers grows every day FERC delays in taking final action.

FERC points out that it has taken preliminary action on these complaints. Indeed, an administrative law judge issued an initial decision on the remaining set of complaints in March of 2021.[22] But FERC then took no further steps toward a final decision for more than a year, and the matter still awaits resolution nearly two years later. FERC's argument that the LPSC cannot be allowed the "jump the queue" is also unhelpful, given that the LPSC really complains about the *age* of that wait list rather than its position in it. FERC also points to recent judicial opinions rejecting its method for calculating utilities' return on equity.[23] Yet these speedbumps—five years apart—do not explain proceedings lasting four-to-six years. And FERC runs the risk that intervening litigation will upset ongoing matters stretching over such a long time frame.

---

[20] *See* Complaint, La. Pub. Serv. Comm'n v. Sys. Energy Res., Inc., EL21-56 (Mar. 2, 2021).

[21] Order Approving Uncontested Settlement, 181 FERC ¶ 61,120 ¶ 12 (Nov. 17, 2022).

[22] Initial Decision, 174 FERC ¶ 63,024 (March 24, 2021) (FERC Docket EL17-41 et al.).

[23] *See generally Emera Maine v. FERC*, 854 F.3d 9 (D.C. Cir. 2017); *MISO Transmission Owners v. FERC*, 45 F.4th 248 (D.C. Cir. 2022).

No. 22-60458

FERC is correct that ratemaking is challenging work,[24] and we are fully aware of the difficulties attending the substitution of nuclear for other power sources, with its attendant difficulties of allocating huge installation costs among electrical suppliers now looking to a new power source.[25] Yet Congress has duly charged FERC with this important duty,[26] and FERC has yet to provide this court with a meaningful explanation for its inability to expeditiously conclude Section 206 proceedings. FERC must convince this court that it has acted "within a reasonable time . . . to conclude [the] matter presented to it."[27] In failing to do so, FERC risks judicial intervention to protect the rights of the parties before it and the interests of consumers.

****

We ORDER the Federal Energy Regulatory Commission to provide this court—within 21 days—with a meaningful explanation for the length of time the Commission takes for final action in Section 206 complaint proceedings, including those at issue here. This court will retain jurisdiction over this case in the interim.

---

[24] *See Farmers Union Cent. Exch., Inc. v. FERC*, 734 F.2d 1486, 1508 (D.C. Cir. 1984) ("It has been stated that rate making is the most complicated and difficult work connected with transportation." (quoting *The Economic Regulation of Business and Industry: A Legislative History of U.S. Regulatory Agencies* 667 (B. Schwartz ed. 1973) (remarks of Rep. Knapp))).

[25] *See, e.g.*, *Mississippi Power & Light Co. v. Mississippi ex rel. Moore*, 487 U.S. 354, 360–64 (1988) (discussing difficult cost allocation issues related to Grand Gulf).

[26] When it created FERC, Congress charged the Commission with the "establishment, review, and enforcement of rates and charges for the transmission or sale of electric energy." Department of Energy Organization Act, Pub. L. No. 95-91, 91 Stat. 565, 584 (1977).

[27] 5 U.S.C. § 555(b).